1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

KIMLYN KHAM,                                        CASE NO. CV F 12-0321 LJO BAM

                         Plaintiff,          **ORDER TO DISMISS**
           vs.                               (Doc. 10.)

EXECUTIVE TRUSTEE SERVICES,
LLC, et al.,

                         Defendants.

_____/

**INTRODUCTION**

Defendants GMAC Mortgage, LLC ("GMAC") and Executive Trustee Services, LLC ("ETS") seek to dismiss as legally barred pro se plaintiff Kimlyn Kham's ("Ms. Kham's") claims arising from her loan default for and foreclosure of her Modesto property ("property"). This Court construes Ms. Kham's action as an attempt to thwart, delay or complicate post-foreclosure matters. For the reasons discussed below, this Court DISMISSES this action based on the absence of Ms. Kham's credible claims and VACATES the April 10, 2012 hearing set by GMAC and ETS (collectively "defendants").

/ / /

/ / /

1

# BACKGROUND[1]

## Ms. Kham's Loans And Property Foreclosure

On May 3, 2006, Ms. Kham obtained a $308,000 refinance loan from GreenPoint Mortgage Funding, Inc. ("GreenPoint"), which was secured by a deed of trust ("DOT") on the property. Ms. Kham also obtained from GreenPoint a home equity line of credit with a $38,500 limit and which was secured by a deed of trust.

In 2009, Ms. Kham defaulted on the refinance loan. On May 21, 2009, Mortgage Electronic Registration Systems, Inc. ("MERS"), the DOT beneficiary, substituted ETS as DOT trustee. On August 24, 2009, ETS recorded a notice of trustee's sale for the property.[2]

In an assignment recorded on January 5, 2010, MERS assigned all beneficial interest under the DOT to GMAC.

On October 8, 2010, ETS recorded a second notice of trustee's sale for the property. GMAC acquired the property at June 29, 2011 trustee's sale.

## Bankruptcy And Other Delays

On October 19, 2009, nearly two months after the first notice of trustee's sale of the property, Ms. Kham filed a chapter 13 bankruptcy which was dismissed on November 30, 2009 due to Ms. Kham's failure to file documents.

During December 2009 to February 28, 2011, Ms. Kham filed 16 additional chapter 13 bankruptcies, each of which was dismissed for failure to prosecute. The bankruptcy court's March 9, 2011 order barred Mr. Kham to file another bankruptcy for four years.

On March 31, 2010, Ms. Kham purported to quitclaim her interest in the property to herself and Top to Bottom Cleaning Service ("Top to Bottom").

On September 28, 2011, Darren Kham filed a chapter 13 bankruptcy and used the property as his address. The bankruptcy court's October 18, 2011 order noted that Darren Kham "is one of a group

---

[1]    The factual recitation is derived generally from Ms. Kham's First Amended Complaint for Damages ("complaint"), the subject of defendants' challenges, as well as matters of which this Court may take judicial notice.

[2]    Documents pertaining to Ms. Kham's loan, default and property foreclosure were recorded with the Stanislaus County Recorder.

of individuals all purporting to be doing business as Top to Bottom Cleaning Services who have, collectively, filed forty-seven cases within the past twenty-four months, and forty-five of these cases have been dismissed because of the debtor's failure to timely prosecute the respective case." Most of the bankruptcy schedules of individuals purporting to do business at Top to Bottom included the property as a debtor asset.

A month after the foreclosure sale, Franklin Rosario ("Mr. Rosario"), Ms. Kham's Top to Bottom partner, initiated a bankruptcy adversary proceeding against GMAC and ETS to claim the foreclosure sale was invalid because it violated his bankruptcy's automatic stay. Mr. Rosario's amended adversary complaint alleges that prior to the foreclosure sale, he notified defendants that the property "was in bankruptcy" and that he went to the June 29, 2011 trustee's sale and provided his bankruptcy paperwork to the auctioneer prior to the trustee' sale. Mr. Rosario's amended adversary complaint was dismissed on September 27, 2011.

### Ms. Kham's Claims

The complaint challenges the foreclosure sale's validity in that the DOT "has been cured" and "GMAC acquired certain cured assets and liabilities" of GreenPoint. The complaint alleges California tort and statutory claims which will be discussed below.

### DISCUSSION

### Sua Sponte Dismissal

Defendants characterize the complaint as "an attempt to delay the consequences of the foreclosure sale" given the complaint's failure "to allege a factual basis for any viable cause of action."

"A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981). Sua sponte dismissal may be made before process is served on defendants. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*, 745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte prior to service of process on defendants).

"When a federal court reviews the sufficiency of a complaint, before the reception of any

evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must  not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

4

1   *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

2        In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court

3   explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

8        After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

9   to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content,

10  must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572

11  F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

12       The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

22  *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

23       As discussed below, the complaint is subject to dismissal in the absence of claims supported by

24  a cognizable legal theory or sufficient facts alleged under a cognizable legal theory.  In short, the

25  complaint's claims are legally barred.

26                          **Failure To Satisfy F.R.Civ.P. 8**

27       The complaint is subject to global attack for failure to satisfy F.R.Civ.P. 8, which requires a

28  plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying the

transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct." This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180. "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179.

Moreover, a pleading may not simply allege a wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones*, 733 F.2d at 649. A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). The U.S. Supreme Court has explained:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Twombly*, 550 U.S. at 556, n. 3, 127 S.Ct. 1955.

Moreover, a plaintiff suing multiple defendants "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them." *Gauvin v. Trombatore*, 682 F.Supp. 1067, 1071 (N.D. Cal. 1988). "Specific identification of the parties to the

1   activities alleged by the plaintiffs is required in this action to enable the defendant to plead intelligently."

2   *Van Dyke Ford, Inc. v. Ford Motor Co.,* 399 F.Supp. 277, 284 (D. Wis. 1975).

3       The complaint fails to satisfy F.R.Civ.P. 8. The complaint offers only naked assertions lacking

4   necessary factual enhancement. The complaint lacks cognizable facts of defendants' purported

5   wrongdoing to provide fair notice as to what defendants are to defend. The complaint merely notes lack

6   to entitlement to proceed with the foreclosure sale and that foreclosure on a deed of trust "that had

7   already been cured." The complaint lacks cognizable claims or legal theories upon which to support

8   defendant's liability and fails to distinguish each defendant's separate wrongdoing. The complaint lacks

9   specific, clearly defined allegations to give fair notice of claims plainly and succinctly to warrant

10  dismissal of this action.

11                                **Failure To Tender**

12      The complaint's claims challenge the foreclosure sale of the property. In particular, the

13  complaint's (sixth) cancellation of instruments claim alleges that "Defendant obtained the Deed by

14  foreclosing on a deed of trusts [sic] that had already been cured." The complaint's claims challenging

15  the foreclosure sale are subject to the global defense of Ms. Kham's failure to tender amounts owed on

16  her loans.

17      "A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds*

18  *Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ.

19  Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414

20  (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds*

21  *Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15. "Nothing short of the full amount due the

22  creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount."

23  *Rauer's Law etc. Co. v. S. Proctor Co.,* 40 Cal.App. 524, 525, 181 P. 71 (1919).

24      A defaulted borrower is "required to allege tender of the amount of [the lender's] secured

25  indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah*

26  *v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S.

27  1081, 117 S.Ct. 746 (1997). In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018,

28  1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

                                        7

. . . generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs.  (Citations omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes.  *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971).  The basic rule is that an offer of performance is of no effect if the person making it is not able to perform.  *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing Cal. Civ. Code, § 1495).  Simply put, if the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect.  *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing several cases).  "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property."  *United States Cold Storage v. Great Western Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985).  "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender."  *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured."  *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").  "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness."  *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter

8

into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (1961). "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial foreclosure sales." *Residential Capital v. Cal-Western Reconveyance Corp.*, 108 Cal.App.4th 807, 820, 821, 134 Cal.Rptr.2d 162 (2003).

"The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003). "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154, 1165, 246 Cal.Rptr. 421 (1988). The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney*, 200 Cal.App.3d at 1165, 246 Cal.Rptr. 421.

Neither the complaint nor record references Ms. Kham's tender of indebtedness or meaningful ability to do so. In fact, the record reflects Ms. Kham's more than a dozen bankruptcies to indicate an inability to tender amounts owed on her loans. Silence as to Ms. Kham's tender of or ability to tender amounts outstanding is construed as their concession of inability to do so. Without Ms. Kham's meaningful tender, Ms. Kham seeks empty remedies, not capable of being granted, to support dismissal of the complaint's claims seeking to dispute the foreclosure sale.

### ETS' Privileged Actions

Defendants argue that the privilege of California Civil Code section 47 ("section 47") shields ETS from liability for the complaint's claims.

Non-judicial foreclosure sales "are governed by a 'comprehensive' statutory scheme. This scheme, which is found in Civil Code sections 2924 through 2924k, evidences a legislative intent that a sale which is properly conducted 'constitutes a final adjudication of the rights of the borrower and lender.'" *Royal Thrift and Loan Co. v. County Escrow, Inc.*, 123 Cal.App.4th 24, 32, 20 Cal.Rptr.3d 37

(2004) (quoting *6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.,* 85 Cal.App.4th 1279, 1283-1284, 102 Cal.Rptr.2d 711, fn. omitted (2001)).

Subsection (d) of California Civil Code section 2924 ("section 2924") renders as section 47 "privileged communications" the "mailing, publication, and delivery" of foreclosure notices and "performance" of foreclosure procedures. "[W]e conclude that the protection granted to nonjudicial foreclosure . . . is the qualified common interest privilege of section 47, subdivision (c)(1)." *Kachlon v. Markowitz*, 168 Cal.App.4th 316, 341, 85 Cal.Rptr.3d 532 (2008); *see Consumer Solutions REO, LLC v. Hillery*, 658 F.Supp.2d 1002, 1018 (N.D. Cal. 2009) (conduct is "protected by the qualified privilege of § 47(c) so long as . . . not malicious"); *see also Hagberg v. California Federal Bank FSB*, 32 Cal.4th 350, 361 81 P.3d 244 (2004) ("As noted, the only tort claim we have identified as falling outside the privilege established by section 47(b) is malicious prosecution.").

ETS' alleged wrongs are subject to section 2924(d) immunity. In the absence of allegations of ETS' malicious conduct, section immunity 2924(d) bars the complaint's claims against ETS. Defendants are correct that the complaint lacks facts that of ETS' conduct "outside the protection of Civil Code section 47."

### The Foreclosure Sale

Defendants challenge the complaint's allegations of foreclosure sale and notice irregularities.

### *Presumption Of Propriety*

Under California law, a lender may pursue non-judicial foreclosure upon default with a deed of trust with a power of sale clause. "Financing or refinancing of real property is generally accomplished in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of the loan." *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000). A deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender may non-judicially foreclose. *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237, 286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under the

applicable California Civil Code sections:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins. Co.,* 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.")

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process.  Under California Civil Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee."  "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale."  *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

 "A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender."  *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777.  "As a general rule, a trustee's sale is complete upon acceptance of the final bid."  *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440-441, 129 Cal.Rptr.2d 436 (2003).  "If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser."  *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777 (citations omitted).  "A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.'"  *Melendrez v. D & I Investment, Inc.,* 127 Cal.App.4th 1238, 1258, 26 Cal.Rptr.3d 413 (2005) (quoting *Brown v. Busch,* 152 Cal.App.2d 200, 204, 313 P.2d 19 (1957)).  "This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity."  *Melendrez*, 127 Cal.App.4th at 1258, 26 Cal.Rptr.3d 413.

To challenge foreclosure, "it is necessary for the complaint to state a case within the code sections for which reason it is essential to allege the facts affecting the validity and invalidity of the

instrument which is attacked." *Kroeker v. Hurlbert,* 38 Cal.App.2d 261, 266, 101 P.2d 101 (1940).  A "trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust."  *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970).  As the California Supreme Court explained decades ago:

> It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties. Sham bidding and the restriction of competition are condemned, and inadequacy of price when coupled with other circumstances of fraud may also constitute ground for setting aside the sale.

*Bank of America Nat. Trust & Savings Ass'n v. Reidy*, 15 Cal.2d 243, 248, 101 P.2d 77 (1940).

The trustee's deed upon sale of the property states: "All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust have been complied with."  As such, defendants are entitled to the rebuttable presumption that the foreclosure sale was proper.

The complaint lacks facts of a specific statutory irregularity or misconduct in the foreclosure proceedings.  The complaint's apparent attempt to challenge foreclosure validity offers nothing to support a discrepancy in the foreclosure process to warrant dismissal of the complaint's claims.  The complaint lacks allegations to overcome the presumption of foreclosure sale validity with its absence to identify a specific procedural defect.

### *Receipt Of Trustee's Sale Notice*

The complaint alleges that Ms. Kham "never received notice of trustee sale."  Defendants characterize as "immaterial" actual receipt of the trustee's sale notice.

California courts do not require actual receipt of default and sale notices:

> We pointedly emphasize, however, that Civil Code sections 2924-2924h, inclusive, **do not require actual receipt by a trustor of a notice of default or notice of sale**. They simply mandate certain procedural requirements reasonably calculated to inform those who may be affected by a foreclosure sale and who have requested notice in the statutory manner that a default has occurred and a foreclosure sale is imminent.

*Lupertino v. Carbahal*, 35 Cal.App.3d 742, 746-747, 111 Cal.Rptr. 112 (1973) (bold added); *see Knapp v. Doherty,* 123 Cal.App.4th 76, 88-89, 20 Cal.Rptr.3d 1 (2004) ("The trustor need not receive actual

1  notice of the trustee's sale so long as notice is provided to the trustor that is in compliance with the

2  statute.")

3       Defendants are correct that the complaint's bare allegation of non-receipt of the trustee's sale

4  notice is insufficient to overcome the presumption of foreclosure sale propriety.

5                                              ***Lack Of Prejudice***

6       Defendants further fault the absence of allegations of Ms. Kham's prejudice from lack of notice.

7       A "successful challenge to the sale requires evidence of a failure to comply with the procedural

8  requirements for the foreclosure sale that caused prejudice to the person attacking the sale." *6 Angels,*

9  *Inc. v. Stuart-Wright Mortgage, Inc.*, 85 Cal.App.4th 1279, 1284, 102 Cal.Rptr.2d 711 (2001) (citation

10 omitted); *see Knapp v. Doherty*, 123 Cal.App.4th 76, 94, 20 Cal.Rptr.3d 1 (2004) ("courts have rejected

11 claims of deficient notice where no prejudice was suffered as a result of the procedural irregularity").

12      A "plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the

13 alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests." *Fontenot v.*

14 *Wells Fargo Bank, N.A.*, 198 Cal.App.4th 256, 272, 129 Cal.Rptr.3d 467 (2011); *see Knapp v. Doherty*,

15 123 Cal.App.4th 76, 86, n. 4, 20 Cal.Rptr.3d 1 (2004) ("A nonjudicial foreclosure sale is presumed to

16 have been conducted regularly and fairly; one attacking the sale must overcome this common law

17 presumption 'by pleading and proving an improper procedure and the resulting prejudice.'"); *Angell v.*

18 *Superior Court,* 73 Cal.App.4th 691, 700, 86 Cal.Rptr.2d 657 (1999) (failure to comply with procedural

19 requirements must cause prejudice to plaintiff).  Prejudice is not presumed from "mere irregularities"

20 in the process.  *Meux v. Trezevant*, 132 Cal. 487, 490, 64 P. 848 (1901).

21      The complaint lacks allegations of requisite prejudice to Ms. Kham in connection with the

22 foreclosure process, especially given her inability to tender amounts owed on her loans and multiple

23 bankruptcy filings.  Defendants correctly note that improper notice claims are contradicted by the

24 contentions of Ms. Kham's business partner Mr. Rosario that he tried to delay the foreclosure sale by

25 contacting defendants.  The complaint's claims to challenge the foreclosure process lack merit and are

26 legally barred.

27                                          **Conspiracy And Fraud**

28      The complaint's (first) conspiracy claim alleges that defendants "conspired and agreed among

themselves to defraud Plaintiff of his [sic] title to, and interest in, the Subject Property."   The complaint's (second) fraud claim alleges that on June 29, 2011, Ms. Kham "discovered that defendant GMAC had proceeded with a foreclosure sale of the Subject Property by Trustee's sale under a cured Deed of Trusts [sic]."

Defendants attack the two fraud-based claims as lacking sufficient particularity to satisfy F.R.Civ.P. 9(b).

### Fraud Elements

The elements of a California fraud claim are: (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377 (1996).   The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance.  *Caldo v. Owens-Illinois, Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

"[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133, 156, 53 Cal.Rptr.2d 336 (1996).  There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.  "The absence of any one of these required elements will preclude recovery."  *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231 Cal.Rptr. 355 (1986).

### Particularity Pleading Standard

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[3] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s

---

[3]     F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original)).

particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107.[4] A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in

---

[4]      "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *see Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity."); *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (1986) ("the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").

In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

F.R.Civ.P. 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co*., 995 F.Supp. 1437, 1439 (M.D. Fla.1998)). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989). "To state a claim of fraudulent conduct, which carries substantial reputational costs, plaintiffs must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Cal. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1433 (N.D. Cal.1988)).

The complaint lacks facts to identify specific statements, who make statements, authority to make statements, and when statements were made. The complaint merely relies on an unintelligible concept of "cured" deeds of trust. The complaint's conclusory allegations fail to meet Rule 9(b)'s strict standard. The complaint lacks precise allegations as to what defendants, through specifically identified and

authorized agents or representatives, allegedly promised or represented. The complaint lacks facts to support fraud elements let alone the who, what, when, when and how of alleged misconduct and the heightened federal pleading standard.   The complaint relies on mere notions of an expected postponement of foreclosure without supporting facts or necessary details.  The complaint's incomplete allegations are insufficient to warrant dismissal of the complaint's claims sounding in fraud.

### *Civil Conspiracy*

Defendants further fault the absence of an underlying tort to support the complaint's conspiracy allegations.

"[C]ivil conspiracy is not an independent tort."  *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1581, 47 Cal.Rptr.2d 752 (1995).  "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-511, 28 Cal.Rptr.2d 475 (1994) (citing *Wyatt v. Union Mortgage Co.,*24 Cal.3d 773, 784,157 Cal.Rptr. 392, 598 P.2d 45 (1979)).   "Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort." *Applied Equipment*, 7 Cal.4th at 511, 28 Cal.Rptr.2d 475.  "The essence of the claim is that it is merely a mechanism for imposing vicarious liability; it is not itself a substantive basis for liability." *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, 131 Cal.App.4th 802, 823, 32 Cal.Rptr.3d 325 (2005).

" Liability for civil conspiracy generally requires three elements: (1) formation of a conspiracy (an agreement to commit wrongful acts); (2) operation of a conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of a conspiracy." *Davenport v. Litton Loan Servicing, LP,* 725 F.Supp.2d 862, 881 (N.D. Cal. 2010).  "The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose." *Kidron*, 40 Cal.App.4th at 1581, 47 Cal.Rptr.2d 752; *see Wyatt v. Union Mortgage Co.,*24 Cal.3d 773, 784-786, 157 Cal.Rptr. 392 (1979) ("a plaintiff is entitled to damages from those defendants who concurred in the tortious scheme with knowledge of its unlawful purpose"); *People v. Austin*, 23 Cal.App.4th 1596, 1607, 28 Cal.Rptr.2d 885 (1994) ("without knowledge of the illegal purpose there

is no basis for inferring an agreement"). "The effect of charging . . . conspiratorial conduct is to implicate all . . . who agree to the plan to commit the wrong as well as those who actually carry it out. *Black v. Sullivan,* 48 Cal.App.3d 557, 566, 122 Cal.Rptr. 119 (1975).

The conspiracy claim fails in the absence of facts to support necessary elements. Of key importance, the complaint fails to identify defendants' agreement between themselves or with others to plan to commit wrongs along with actual commission of an actionable tort. The complaint lacks facts of wrongful conduct attributable to defendants directly or through their concurrence in a tortious scheme with knowledge of its unlawful purpose. The complaint points to no damage to Ms. Kham from defendants' purported conspiracy. As such, the conspiracy claim is subject to dismissal.

### Quiet Title

The complaint's (third) quiet title claim alleges that Ms. Kham "is the true and rightful owner of the Subject Property" and that GMAC's claim of ownership is based on "an instrument procured by fraud."

Defendants challenge the quiet title claim's failure to satisfy statutory and tender requirements.

California Code of Civil Procedure section 760.010 provides for an action "to establish title against adverse claims to real or personal property or any interest therein." California Code of Civil Procedure section 761.020 mandates a "verified" complaint for a quiet title action to include:

1.    A legal description and street address of the subject real property;

2.    The title of plaintiff as to which determination is sought and the basis of the title;

3.    The adverse claims to the title of the plaintiff against which a determination is sought;

4.    The date as of which the determination is sought; and

5.    A prayer for the determination of the title of the plaintiff against the adverse claims.

The quiet title remedy "is cumulative and not exclusive of any other remedy, form or right of action, or proceeding provided by law for establishing or quieting title to property." Cal. Code Civ. Proc., § 760.030.

The complaint lacks the property's legal description and facts as to the title of which Ms. Kham seeks determination and the basis of Ms. Kham's purported title given her inability to tender amounts due on her loans. A quiet title claim requires an allegation that the plaintiffs "are the rightful owners

18

of the property, i.e., that they have satisfied their obligations under the Deed of Trust." *See Kelley v. Mortgage Electronic Registration Systems, Inc.*, 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009). The complaint lacks facts that Ms. Kham is the property's rightful owner, has satisfied DOT obligations and thus lacks a properly pled quiet title claim.

Moreover, a purported quiet title claim is doomed in the absence of a tender of amounts owed. "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt.  The cloud upon his title persists until the debt is paid.").

"A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117,  92 Cal.Rptr. 851.  An "action to set aside the sale, unaccompanied by an offer to redeem, would not state a cause of action which a court of equity would recognize." *Copsey v. Sacramento Bank*, 133 Cal. 659, 662, 66 P. 7 (1901).

Ms. Kham is unable to re-acquire good title to the foreclosed property without paying or tendering her outstanding indebtedness.  With the complaint's absence of a meaningful ability or willingness to tender the indebtedness, a purported quiet title claim fails.  This Court is not in a position to award plaintiffs a windfall.

Lastly, defendants are correct that the foreclosure sale extinguished Ms. Kham's interest in the property. "A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender." *Moeller,* 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777.  "As a general rule, a trustee's sale is complete upon acceptance of the final bid." *Nguyen*, 105 Cal.App.4th 428, 440-441, 129 Cal.Rptr.2d 436.  The quiet title claim fails and is subject to dismissal.

**Breach Of Fiduciary Duty**

The complaint's (fourth) claim alleges that "[a]s trustee of the Deed of Trusts [sic] which was previously cured by Plaintiff (Kimlyn Kham), ETS and GMAC owe Plaintiff a fiduciary duty of care and candor."

*DOT Trustee*

Defendants argue that no fiduciary duties are owed by a trustee under a deed of trust.

"Financing or refinancing of real property is generally accomplished in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of the loan." *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000). A deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender may non-judicially foreclose. *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237, 286 P. 693 (1930).

An "ordinary trust deed conveys the legal title to the trustee only so far as may be necessary to the execution of the trust." *Lupertino v. Carbahal*, 35 Cal.App.3d 742, 748, 111 Cal.Rptr. 112 (1973). A deed of trust "carries none of the incidents of ownership of the property, other than the right to convey upon default on the part of the debtor in the payment of his debt." *Lupertino*, 35 Cal.App.3d at 748, 111 Cal.Rptr. 112 (quoting *Bank of Italy, etc. Assn. v. Bentley,* 217 Cal. 644, 656, 20 P.2d 940 (1933)). The California Court of Appeal has explained a deed of trust trustee's limited authority:

> The trustee under a deed of trust "is not a true trustee, and owes no fiduciary obligations; [it] merely acts as a common agent for the trustor and beneficiary of the deed of trust. [The trustee's] only duties are: (1) upon default to undertake the steps necessary to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the deed of trust." (*Vournas v. Fidelity National Title Ins. Co.* (1999) 73 Cal.App.4th 668, 677, 86 Cal.Rptr.2d 490.) Consistent with this view, California courts have refused to impose duties on the trustee other than those imposed by statute or specified in the deed of trust. As our Supreme Court noted in *I.E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 216 Cal.Rptr. 438, 702 P.2d 596, "The rights and powers of trustees in nonjudicial foreclosure proceedings have long been regarded as strictly limited and defined by the contract of the parties and the statutes.... [¶] ... [T]here is no authority for the proposition that a trustee under a deed of trust owes any duties with respect to exercise of the power of sale beyond those specified in the deed and the statutes." ( Id.

1   at pp. 287-288, 216 Cal.Rptr. 438, 702 P.2d 596.)

2   *Heritage Oaks Partners v. First American Title Ins. Co.,* 155 Cal.App.4th 339, 345, 66 Cal.Rptr.3d 510

3   (2007).

4         "The trustee in nonjudicial foreclosure is not a true trustee with fiduciary duties, but rather a

5   common agent for the trustor and beneficiary. . . . The scope and nature of the trustee's duties are

6   exclusively defined by the deed of trust and the governing statutes. No other common law duties exist."

7   *Kachlon v. Markowitz*, 168 Cal.App.4th 316, 335, 85 Cal.Rptr.3d 532 (2008) (citations omitted).  "The

8   similarities between a trustee of an express trust and a trustee under a deed of trust end with the name.

9   . . . [T]he trustee under a deed of trust does not have a true trustee's interest in, and control over, the trust

10  property. Nor is it bound by the fiduciary duties that characterize a true trustee." *Monterey SP*

11  *Partnership v. WL Bangham*, 49 Cal.3d 454, 462-463, 261 Cal.Rtpr. 587 (1989).

12        A "trustee has a general duty to conduct the sale 'fairly, openly, reasonably, and with due

13  diligence,' exercising sound discretion to protect the rights of the mortgagor and others." *Hatch v.*

14  *Collins,* 225 Cal.App.3d 1104, 1112, 275 Cal.Rptr. 476 (1990)(citation omitted).

15        The breach of fiduciary duty claim fails to the extent based on trustee obligations.

16                                          ***Lender***

17        Defendants further challenge the breach of fiduciary duty claim in the absence of a fiduciary

18  relationship between a lender and borrower.

19        A fiduciary relationship arises "between parties to a transaction wherein one of the parties is .

20  . . duty bound to act with the utmost good faith for the benefit of the other party." *Herbert v.*

21  *Lankershim*, 9 Cal.2d 409, 483, 71 P.2d 220 (1937).  A fiduciary relationship "ordinarily arises where

22  a confidence is reposed by one person in the integrity of another, and in such a relation the party in

23  whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take

24  no advantage from his acts relating to the interest of the other party without the latter's knowledge or

25  consent."   *Herbert*, 9 Cal.2d at 483, 71 P.2d 220.

26         Nonetheless "no fiduciary relationship is established merely because 'the parties reposed trust

27  and confidence in each other.'" *Girard v. Delta Towers Joint Venture*, 20 Cal.App.4th 1741, 1749, 26

28  Cal.Rptr.2d 102 (1993) (quoting *Worldvision Enterprises, Inc. v. American Broadcasting Companies,*

*Inc.,* 142 Cal.App.3d 589, 595, 191 Cal.Rptr. 148 (1983)).  To be charged with a fiduciary obligation, a person must knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law.  *City of Hope Nat. Medical Center v. Genentech, Inc.*, 43 Cal.4th 375, 385, 181 P.3d 142 (2008).

"California courts have not extended the 'special relationship' doctrine to include ordinary commercial contractual relationships" *Martin v. U-Haul Co. of Fresno,* 204 Cal.App.3d 396, 412, 251 Cal.Rptr. 17 (1988) (citations omitted).  "The relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1093, n. 1, 283 Cal.Rptr. 53 (1991) (citing *Price v. Wells Fargo Bank,* 213 Cal.App.3d 465, 476-478, 261 Cal.Rptr. 735 (1989)).  A commercial lender is entitled to pursue its own economic interests in a loan transaction. *Nymark*, 231 Cal.App.3d at 1093, n. 1, 283 Cal.Rptr. 53(citing *Kruse v. Bank of America,* 202 Cal.App.3d 38, 67, 248 Cal.Rptr. 217 (1988)).

Absent "special circumstances" a loan transaction is "at arms-length and there is no fiduciary relationship between the borrower and lender." *Oaks Management Corp. v. Superior Court*, 145 Cal.App.4th 453, 466, 51 Cal.Rptr.3d 561 (2006) ("the bank is in no sense a true fiduciary"); *see Downey v. Humphreys,* 102 Cal.App.2d 323, 332, 227 Cal.Rptr. 484 (1951) ("A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such.").  "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53.

The complaint alleges no facts to support a fiduciary relationship between Ms. Kham and either defendant.  The complaint's mere reference to "a fiduciary duty of care and candor" is insufficient to impose a fiduciary relationship on defendants.  The complaint fails to allege existence of a fiduciary or confidential relationship and corresponding duties with requisite specificity to warrant dismissal of the breach of fiduciary duty claim.  Moreover, under the law, no fiduciary duty is imposed on defendants to bar the breach of fiduciary duty claim.

## **Declaratory Relief**

The complaint's (fifth) declaratory relief claim alleges that Ms. Kham "contends that GMAC was

not entitled to proceed with a non-judicial foreclosure and or [sic] foreclosure on the Subject Property."

Defendants argue that the declaratory relief claim is moot with conclusion of the foreclosure sale.

The complaint lacks a viable declaratory relief claim. The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. §2201(a).

The DJA's operation "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937). "A declaratory judgment is not a theory of recovery." *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994). The DJA "merely offers an *additional remedy* to litigants." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2nd Cir. 1997) (italics in original). A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction." *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.1984).

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941). The U.S. Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

23

1  The failure of the complaint's claims as a whole demonstrates the absence of an actual

2  controversy subject to declaratory relief.  A declaratory relief action "brings to the present a litigable

3  controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter*

4  *Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981).  In the absence of a viable claim, the complaint fails

5  to support declaratory relief.  The parties' rights and obligations are settled with conclusion of

6  foreclosure to extinguish a litigable controversy to be tried in the future.

7  **Attempt At Amendment And Malice**

8  As discussed above, the complaint's global claims are barred legally, and Ms. Kham is unable

9  to cure the complaint's claims by allegation of other facts and thus is not granted an attempt to amend.

10  Moreover, this Court surmises that Ms. Kham brought this action in absence of good faith and seeks to

11  exploit the court system to delay or to vex defendants regarding plans for the property.  The test for

12  maliciousness is a subjective one and requires the court to "determine the . . . good faith of the

13  applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795

14  F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has

15  inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process").  A lack of

16  good faith or malice also can be inferred from a complaint containing untrue material allegations of fact

17  or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th

18  Cir. 1984).  An attempt to vex or delay provides further grounds to dismiss this action.

19  **CONCLUSION AND ORDER**

20  For the reasons discussed above, this Court:

21  1.  DISMISSES with prejudice this action against defendants; and

22  2.  DIRECTS the clerk to enter judgment in favor of defendants GMAC Mortgage, LLC and

23  Executive Trustee Services, LLC and against plaintiff Kimlyn Kham and to close this

24  action.

25  IT IS SO ORDERED.

26  **Dated:    March 20, 2012                           /s/ Lawrence J. O'Neill**
                                                   UNITED STATES DISTRICT JUDGE

27

28